UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAMMY LEE PHILLIPPI,<br><br>        Plaintiff,<br><br>      v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF THE<br>SOCIAL SECURITY ADMINISTRATION,<br><br>        Defendant. | Case No. ED CV 09-1742-PJW<br><br>MEMORANDUM OPINION AND ORDER |

I.

INTRODUCTION

Before the Court is an appeal by Plaintiff Tammy Lee Phillippi of a decision by the Social Security Administration (hereinafter the "Agency"), denying her application for Disability Insurance benefits ("DIB"). Plaintiff claims that the Administrative Law Judge ("ALJ") erred when he concluded that she did not meet the Listing requirements for her depressive disorder, rejected the opinion of various doctors, and found that she was not credible. For the following reasons the Agency's decision is affirmed and the case is dismissed with prejudice.

II.

SUMMARY OF FACTS AND PROCEEDINGS

In July 2006, Plaintiff applied for DIB, alleging that she had been disabled since October 2005, due to chronic fatigue syndrome and depression. The Agency denied the application initially and on reconsideration. Plaintiff then requested and was granted an administrative hearing before an ALJ. On September 19, 2008, she appeared with counsel at the hearing and testified. (Administrative Record ("AR") at 27-55.) On January 20, 2009, the ALJ issued a decision, denying her claim for benefits. (AR 14-21.) This appeal followed.

III.

ANALYSIS

A.   The ALJ's Findings Regarding the Medical Evidence

In her first claim of error, Plaintiff contends that the ALJ erred when he concluded that Plaintiff's depression did not meet the requirements of Listing 12.04, Affective Disorders. (Plaintiff's Summary Judgment Motion (hereinafter "Motion") at 6-11.) In Plaintiff's view, the ALJ improperly ignored the opinions of the doctors to do so. For the reasons explained below, the Court concludes that the ALJ did not err when he found that Plaintiff did not meet the requirements of Listing 12.04.

Listing 12.04, dealing with affective disorders, reads as follows:

> Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.

    A. Medically documented persistence, either continuous or intermittent, of one of the following:

        1. Depressive syndrome characterized by at least four of the following:

            a. Anhedonia or pervasive loss of interest in almost all activities; or
            b. Appetite disturbance with change in weight; or
            c. Sleep disturbance; or
            d. Psychomotor agitation or retardation; or
            e. Decreased energy; or
            f. Feelings of guilt or worthlessness; or
            g. Difficulty concentrating or thinking; or
            h. Thoughts of suicide; or
            i. Hallucinations, delusions or paranoid thinking; or

        2. Manic syndrome characterized by at least three of the following:

            a. Hyperactivity; or
            b. Pressure of speech; or
            c. Flight of ideas; or
            d. Inflated self-esteem; or
            e. Decreased need for sleep; or
            f. Easy distractibility; or

    g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

    h. Hallucinations, delusions or paranoid thinking;

  Or

  3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

  And

B. Resulting in at least two of the following:

  1. Marked restriction of activities of daily living; or

  2. Marked difficulties in maintaining social functioning; or

  3. Marked difficulties in maintaining concentration, persistence, or pace; or

  4. Repeated episodes of decompensation, each of extended duration;

  Or

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

```
            1.   Repeated episodes of decompensation, each of
                 extended duration; or
            2.   A residual disease process that has resulted in
                 such marginal adjustment that even a minimal
                 increase in mental demands or change in the
                 environment would be predicted to cause the
                 individual to decompensate; or
            3.   Current history of 1 or more years' inability to
                 function outside a highly supportive living
                 arrangement, with an indication of continued need
                 for such an arrangement.
```

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

In her brief, Plaintiff goes through various criteria for § 12.04 and explains why she believes that she meets them.[1] (Motion at 6-12.) As explained below, the Court does not find Plaintiff's arguments persuasive.[2]

Plaintiff's attempt to establish that she fits within the requirements of Listing 12.04 is wanting. She points out, for

---

[1] Plaintiff was represented by counsel when she filed this action over a year ago. Thereafter, Plaintiff's counsel moved to withdraw from the case, signaling to the Court at the hearing, it seems, that he was unable to find any issues on which he could argue in good faith that the ALJ had erred. Thereafter, Plaintiff filed a brief on her own behalf.

[2] The Agency did not address Plaintiff's claim that she meets the Listing requirements. It has, instead, addressed the ALJ's decision to discount some of the doctors' findings which would have supported Plaintiff's argument that she met the Listing. As a result, the Court is compelled to address Plaintiff's arguments without the benefit of the Agency's position. In the future, the Court would be grateful to the Agency if it would address the plaintiffs' arguments in its briefs.

example, that she suffers from anhedonia and a lack of interest in activities (§12.04(A)(1)(a)) and cites as proof statements that she and her husband made during the course of these proceedings. (Joint Stip. at 7.) But the ALJ discounted her credibility, an issue the Court will address infra, and, thus, her subjective claims are not enough to establish that she meets the requirements of the Listing. As to her husband's input--a letter he submitted after the ALJ denied her claim (AR 22)--the Court cannot fault the ALJ for not having considered it.

Plaintiff complains that she suffers from sleep apnea and points out that this is another factor to be considered. *See* §12.04(A)(1)(c). But, as the ALJ pointed out, Plaintiff testified that her sleep apnea is controlled with a CPAP machine. (AR 19.)

Plaintiff's real issue with the ALJ's decision is that he failed to accept the opinions of the doctors who found her most limited, in particular, consulting doctor Inderpal Randhawa. (Motion at 10-11.) Plaintiff notes that Dr. Randhawa concluded that Plaintiff was "not able to perform any sort of exertional or non-exertional activity in any meaningful status." (AR 169.) Had the ALJ accepted this finding, she argues, he would have concluded that she was disabled. Again, the Court does not find error, here.

The ALJ discounted Dr. Randhawa's opinion because it amounted to an opinion of disability, which he concluded was not binding on him. (AR 19.) He also noted that Dr. Randhawa's opinion was based primarily on Plaintiff's statements to him, which the ALJ did not find believable. (AR 19.) He pointed out further that Dr. Randhawa's opinion was not supported by the results of his examination of Plaintiff and was inconsistent with Plaintiff's claimed daily

activities. (AR 19.) These are all legitimate reasons under the law to discount a doctor's opinion. *Tonapetyan v. Halter,* 242 F.3d 1144, 1148 (9th Cir. 2001) (noting doctor's opinion that claimant is disabled is not binding on ALJ); *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (upholding ALJ's rejection of doctor's opinion based on claimant's statements where ALJ concluded that claimant was not credible); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (holding discrepancy between doctor's treatment notes and doctor's opinion is clear and convincing reason to reject doctor's opinion). And, further, they are supported by the record. (AR 165-69.) Though Dr. Randhawa did conclude that Plaintiff could not perform any activities, he concluded in the same sentence that Plaintiff had no functional limitations. (AR 169.) His opinion that she could not perform any activities was not based on anything he uncovered in his examination of Plaintiff. Rather, it was based on Plaintiff's report to him that she spent three days out of each week in bed. (AR 165-66.) As such, the ALJ properly rejected Dr. Randhawa's opinion that Plaintiff could not perform any activities because it was based on her self-serving statements which the ALJ rejected and it was not supported by the doctor's own findings.

B.  The Credibility Findings

Plaintiff contends that the ALJ erred when he found that she was not credible. She argues that, "[i]t is not plausible for a neutral jurist to completely discount Plaintiff's testimony . . . ." (Motion at 13.) Again, the Court disagrees.

Credibility determinations are the province of the ALJ. *See Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). In order for an ALJ to reject a claimant's credibility, he need only provide specific, clear,

and convincing reasons for doing so.  *See Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  In making this determination, the ALJ may take into account, among other things, ordinary credibility evaluation techniques.  *Id.*

The ALJ cited numerous reasons for rejecting Plaintiff's testimony, including:

1. The objective medical evidence did not support her claimed limitations.
2. An MRI brain scan was normal, despite Plaintiff's claims of chronic headaches.
3. Plaintiff's course of treatment had been fairly conservative considering the extent of her claimed ailments.
4. Plaintiff had not required any hospitalization or emergency care for periods when her condition was exacerbated.
5. Plaintiff had not needed any special accommodations to relieve her pain and other symptoms.
6. Plaintiff did not exhibit muscle atrophy or loss of strength, despite her claims of disabling pain and weakness.
7. Plaintiff's medications proved effective in controlling her symptoms and had not caused any side effects.
8. Plaintiff had not suffered any weight loss due to her depression and anhedonia.
9. Plaintiff had not experienced any sleep loss and her apnea had been controlled with a CPAP machine.
10. Plaintiff had not experienced any cognitive decline despite her depression and, in fact, had tested above average in mental acuity tests.

```
       11.  Plaintiff's daily activities were inconsistent with her
            claims of debilitation.
       12.  None of Plaintiff's physicians had opined that she was
            disabled.
```
(AR 18-19.)

For the most part, these are legitimate reasons for discounting a claimant's claim of debilitating symptoms. *See, e.g., Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony...."); *Smolen*, 80 F.3d at 1284 (holding ALJ can consider effectiveness of medication in controlling symptoms in evaluating claimant's pain testimony); *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984) ("The ALJ can disregard a claimant's self-serving statements if they are unsupported by objective findings."). And, for the most part, they are supported by the record. (AR 14-15, 46 (no side effects from medication), 49 (sleeps through the night), 169 (no physical limitations found by examining doctor), 178 (only slightly limited in mental function), 207-378 (no finding by any of her doctors that she is disabled).) As such, the ALJ's decision that Plaintiff was not credible is affirmed.[3]

C.  The Vocational Expert's Finding

Finally, Plaintiff takes exception to the vocational expert's finding that Plaintiff could work even though she might miss work

---

[3] The Court is unsure as to the basis for the ALJ's finding that Plaintiff's claim that she suffers from chronic headaches was undermined by the fact that an MRI performed on her brain did not disclose any abnormalities. The ALJ did not explain and the Court is not aware of any evidence that suggests that an absence of abnormalities in an MRI proves that a patient is not suffering from headaches.

sometimes and, on the days she's there, might have to lay down for an hour each day during her lunch break. (Motion at 3.) She contends, "It is not plausible for a neutral jurist to . . . believe there are jobs in this nation, during these times, that will tolerate missing 2 days per month, and provide for facilities for one to lay down to rest during lunch." (Motion at 13.) There is no merit to this claim.

The vocational expert testified that, under the Dictionary of Occupational Titles ("DOT"), jobs existed in the national economy where Plaintiff could work even if she had to lay down during lunch and even if she had to miss work up to two times a month. (AR 52-54.) The ALJ is entitled to rely on the vocational expert's testimony to that effect. *See*, *e.g.*, *Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) (holding that vocational expert testimony "may properly be used to show that the particular jobs . . . may be ones that a particular claimant can perform.") Plaintiff's argument that the ALJ erred is really a visceral one; she cannot believe that a vocational expert could reach this conclusion and, further, that in an economy as fragile as the one we are now facing an employer would hire her with her special needs. Though the Court empathizes with Plaintiff, the test is not whether Plaintiff would be the best candidate for a job, but, rather, whether she meets the qualifications for the job as set forth in the DOT. She does. And the vocational expert's testimony to that effect is controlling. For this reason, Plaintiff's claim is denied.

## IV.

## CONCLUSION

For the reasons set forth above, the Court concludes that the ALJ did not err when he concluded that Plaintiff was not entitled to DIB.

1 | The Agency's decision, therefore, is affirmed and the case is
2 | dismissed with prejudice.
3 |      IT IS SO ORDERED.
4 |      DATED: November 19, 2010.

```
                                    /s/ Patrick J. Walsh
                                    _____
                                    PATRICK J. WALSH
                                    UNITED STATES MAGISTRATE JUDGE
```

28 | S:\PJW\Cases-Soc Sec\PHILLIPPI\Memorandum Opinion and Order.wpd